IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

ROBERT JENNINGS,

                                                                      INDEX NO.
                                                                      ECF CASE

                            PLAINTIFF.

                  vs

                                                                       COMPLAINT
THE CITY OF NEW YORK, a municipal entity,        [JURY TRIAL
NEW YORK CITY POLICE OFFICER "BENVENUTO,"    DEMANDED]
NEW YORK CITY POLICE OFFICERS
"JOHN DOES 1-9,"

                           DEFENDANTS.

───────────────────────────────────────

      Plaintiff ROBERT JENNINGS, by his attorney, SAMUEL B. COHEN, complaining of the defendants, respectfully allege as follows:

## I. PRELMINARY STATEMENT

  1.   Plaintiff ROBERT JENNINGS bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

  2.   Plaintiff ROBERT JENNINGS is a gay black man who has been sober for many years, but enjoys socializing in the West Village nightlife scene.  Over the years, Plaintiff ROBERT JENNINGS has become sadly accustomed to police in New York City profiling him due to his race and relatively large size, and has made a point of amicably introducing himself to substantially all police officers who patrol in the West Village during the evening hours, in an attempt to short-circuit those officers' inherent biases and assumptions about persons of his size and ethnicity.

  3.   However, on October 25, 2015, Plaintiff ROBERT JENNINGS was accosted by several Defendant NEW YORK CITY POLICE OFFICER "JOHN DOES" that he had not previously become acquainted with, who forcefully arrested him, alleging that he fit the description of a suspect.  Plaintiff complied with all police instructions, and found when he was escorted to a police van that the actual suspect sought by police had been previously apprehended, and was already in the police van.

4.    Nevertheless, the Defendant NEW YORK CITY POLICE OFFICER "JOHN DOES" kept Plaintiff ROBERT JENNINGS in handcuffs, and transported him to the NYPD 6th Precinct, where he was recognized by numerous officers who informed the Defendant NEW YORK CITY POLICE OFFICER "JOHN DOES" that they had arrested the wrong person.   Nevertheless, Plaintiff ROBERT JENNINGS was held for several hours and released with a violation summons, which was dismissed for legal insufficiency prior to arraignment.

5.    Plaintiff ROBERT JENNINGS was treated with disrespect and profanity by police, arrested, held in painfully tight handcuffs for a period of hours, and experienced pain and discomfort as a result of police conduct exacerbating prior back injuries. As a result, Plaintiff ROBERT JENNINGS was frightened, humiliated, injured and subjected to a wrongful search and arrest.   Plaintiff ROBERT JENNINGS brings this action in a quest for answers as to why he was arrested without probable cause, detained at length and subjected to pretextual summonsing in an apparent attempt to justify a patently wrongful arrest and detention.

## II. JURISDICTION

6.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

7.    Plaintiff ROBERT JENNINGS further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

8.    Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

9.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

10.  The Plaintiff ROBERT JENNINGS is a resident of the City of New York, State of New York, and the County of Kings.

11.  Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

12.   Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

13.   That at all times relevant to this action, the individually named Defendant NEW YORK CITY POLICE OFFICER "BENVENUTO" of the NYPD 6th Precinct ("Defendant POLICE OFFICER "BENVENUTO") was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

14.   Due to "Defendant POLICE OFFICER "BENVENUTO's" sloppy handwriting on the summons issued to Plaintiff ROBERT JENNINGS, the full identity of this Defendant is unknown to Plaintiff at this time.  Plaintiff will amend to completely name this Defendant as his identity becomes available to Plaintiff.

15.   That at all times hereinafter mentioned, the Defendants POLICE OFFICERS "JOHN DOES 1-9" were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

16.   That at all times relevant to this action, the Defendants POLICE OFFICER "BENVENUTO" and NEW YORK CITY POLICE OFFICERS "JOHN DOES 1-9" (collectively, "Defendant POLICE OFFICERS;" individually, "Defendant POLICE OFFICER") either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

17.   Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said Defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

18.   Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.


## VI. FACTS COMMON  TO ALL CLAIMS

19.   Plaintiff ROBERT JENNINGS is an American citizen and is currently a resident of the City, County and State of New York.

20.   Plaintiff ROBERT JENNINGS is a gay African-American male.

21.   Plaintiff ROBERT JENNINGS is a physically large man, of significant stature and a broad build.

22.   Plaintiff ROBERT JENNINGS suffered a spinal injury several years ago which was partially remedied through surgery, but which has left him with a limited range of motion, and susceptible to severe back pain and discomfort from strain and being in uncomfortable positions for extended periods of time.

23.   Plaintiff ROBERT JENNINGS has been sober for a number of years.

24.   Plaintiff ROBERT JENNINGS enjoys socializing and participating in the nightlife of Manhattan's West Village, and goes there often to do so.

25.   Plaintiff ROBERT JENNINGS has been subject to police harassment based on his ethnicity and appearance for substantially his entire life.

26.   Plaintiff ROBERT JENNINGS understands that many police officers possess inherent and learned biases that may cause them to perceive Plaintiff as a threat or a possible criminal based on his ethnicity and appearance.

27.   Plaintiff ROBERT JENNINGS' experiences and the experiences of others in his communities have led him to be extremely courteous and friendly to law enforcement, particularly in the West Village, which has grown ever more gentrified in recent years.

28.   In order to be able to enjoy socializing in the West Village with a minimum of police harassment, Plaintiff ROBERT JENNINGS makes a point of introducing himself to police officers in the West Village, and as a result has many friends among the officers of the 6th Precinct.

29.   In the early morning hours of Sunday, October 25, 2015, Plaintiff ROBERT JENNINGS present on Christopher Street in the West Village when he encountered several Defendant POLICE OFFICERS with whom he had a previous unpleasant encounter.

30.   On that previous occasion, several weeks prior to the incident at issue here, the Defendant POLICE OFFICERS in question had stopped Plaintiff ROBERT JENNINGS, and proceeded to rudely and threateningly demand his name and identification, and to falsely accuse Plaintiffs of selling drugs.

31.   On that previous occasion, Plaintiff had complied with police orders and informed the Defendant POLICE OFFICERS that he was sober and did not sell drugs, and urged them to confirm same with their colleagues, and was not detained.

32.   On information and belief, the Defendant POLICE OFFICERS targeted Plaintiff for enforcement activity based primarily or solely on his race.

33.   On the evening at issue here, Plaintiff ROBERT JENNINGS had been spending an enjoyable Saturday evening and night socializing in the West Village area.

34.   On the evening at issue here, the Defendant POLICE OFFICERS approached Plaintiff ROBERT JENNINGS in a manner that he perceived as threatening, and proceeded to immediately slam Plaintiff ROBERT JENNINGS against a wall.

35.   The Defendant POLICE OFFICERS demanded that Plaintiff produce identification, and he complied.

36.   Plaintiff asked why he was being stopped, and one of the Defendant POLICE OFFICERS told him to "shut the fuck up."

37.   One or more of the Defendant POLICE OFFICERS told Plaintiff that he matched the description of a criminal suspect.

38.   At this point, Plaintiff ROBERT JENNINGS took out his phone to attempt to record the obviously extraordinary encounter in progress.

39.   One of the Defendant POLICE OFFICERS reached towards Plaintiff ROBERT JENNINGS and slapped Plaintiff's phone out of his hand to the ground, breaking Plaintiff's phone and rendering it inoperable.

40.   One of the Defendant POLICE OFFICERS present stated, in sum and substance, "don't worry, he's just filming it," but a more apparently senior Defendant POLICE OFFICER rudely ordered Plaintiff to turn around.

41.   Plaintiff ROBERT JENNINGS complied immediately, but the Defendant POLICE OFFICERS were both rude and threatening, cursing at Plaintiff and telling him to "stop resisting," even though he was completely compliant at all times.

42.   Plaintiff ROBERT JENNINGS informed the Defendant POLICE OFFICERS of his back injury and asked them to be careful in handcuffing him.

43.   The Defendant POLICE OFFICERS took several minutes to handcuff Plaintiff tightly, causing him to exclaim that the handcuffs were too tight and request that they be loosened.

44.   The Defendant POLICE OFFICERS did not loosen Plaintiff's handcuffs at that time, or at any time until Plaintiff reached the 6th Precinct.

45.   Plaintiff ROBERT JENNINGS was left with abrasions and wounds on his wrists from the tight handcuffs applied by the Defendant POLICE OFFICERS,

and experienced discoloration and discomfort in his hands and wrists for several weeks after this incident.  Marks are still visible on Plaintiff's wrists to date.

46.   On information and belief, the Defendant POLICE OFFICERS deliberately applied handcuffs to Plaintiff ROBERT JENNINGS with excessive tightness in retaliation for his attempt to film his encounter with police.

47.   The Defendant POLICE OFFICERS led Plaintiff ROBERT JENNINGS to an NYPD van for transport.

48.   Near the van, Plaintiff and the Defendant POLICE OFFICERS saw that the suspect whose description Plaintiff ROBERT JENNINGS allegedly matched had been separately taken into custody.

49.   Instead of releasing the obviously innocent Plaintiff, Defendants loaded him into the NYPD van along with the actual suspect, who was drunk and belligerent.

50.   Plaintiff ROBERT JENNINGS was experiencing back pain and discomfort from having his arms restrained behind his back.

51.   Plaintiff ROBERT JENNINGS experienced extreme pain as the Defendant POLICE OFFICERS attempted to load him into the back of the police van, and informed the Defendant POLICE OFFICERS that they were hurting his back.

52.   The Defendant POLICE OFFICERS nevertheless placed Plaintiff in the van, directly in front of the actual suspect, who was drunk and belligerent.

53.   The suspect kicked Plaintiff ROBERT JENNINGS in the van, causing Plaintiff ROBERT JENNINGS to suffer additional pain and discomfort.

54.   After a time, the van containing Plaintiff arrived at the NYPD 6th Precinct, and Plaintiff was escorted into the precinct by Defendant POLICE OFFICERS.

55.   The Defendant POLICE OFFICERS dragged Plaintiff ROBERT JENNINGS out of the back of the van, causing him additional pain and discomfort.

56.   Inside the precinct, several police officers recognized Plaintiff as a friendly, sober and helpful neighborhood fixture, and told the Defendant POLICE OFFICERS that they had arrested the wrong man.

57.   Nevertheless, the Defendant POLICE OFFICERS caused Plaintiff to be placed in a holding cell, and did not allow him to make a phone call, despite his request.

58.   Thereafter, Plaintiff was harassed in the holding cell for a period of time by the actual suspect, and when police eventually responded, Plaintiff was taken to a bench in the precinct and re-handcuffed for a period of hours.

59.   Plaintiff was held at the 6th Precinct for several hours before he was approached by a police officer who apologized for the mixup and told Plaintiff that he would be released soon.

60.   As Plaintiff was being released, he was given a summons for disorderly conduct, PL 240.20(6), for allegedly congregating with others and refusing a lawful order to disperse, signed by Defendant POLICE OFFICER "BENVENUTO."

61.   Plaintiff was not congregating with others at the time of his encounter with the Defendant POLICE OFFICERS, and was never the subject of any order to disperse.

62.   On information and belief, the Defendant POLICE OFFICERS issued a summons to Plaintiff as a "cover charge," to attempt to justify their apprehension and confinement of the Plaintiff in the absence of probable cause to believe that Plaintiff had committed any crime or violation.

63.   Plaintiff ROBERT JENNINGS was released and went home, and cleaned the wounds on his wrists.

64.   Plaintiff ROBERT JENNINGS had an appointment scheduled with his doctor the following week, and so did not seek immediate medical treatment, but photographed his injuries and had his doctor document them at their scheduled appointment.

65.   On the morning that Plaintiff ROBERT JENNINGS appeared in court to answer the summons issued to him at the 6th Precinct, he was informed at court that the said summons had been dismissed.

66.   Upon information and belief, the charge tendered by the Defendant Police Officers via the Summons can be characterized as a "contempt of cop" or "cover" charge, meaning a charge that can be levied by officers against individuals whom the officers desire to punish but who have not committed actual crimes or offenses.

67.   Upon information and belief, the three most commonly charged "contempt of cop" or "cover charge" charges utilized by police in New York City are Disorderly Conduct, Obstruction of Governmental Administration, and Resisting Arrest, since those three charges can be levied by officers in the absence of physical evidence or witness testimony of wrongdoing.

68.   Upon information and belief, Defendant Police Officers were aware at the time that they lacked probable cause to arrest Plaintiff ROBERT JENNINGS for any crime or violation.

69.   Upon information and belief, Defendant Police Officers issued a summons to Plaintiff ROBERT JENNINGS even though they knew that they lacked probable cause to arrest Plaintiff ROBERT JENNINGS.

70.   Upon information and belief, Defendant Police Officers issued a summons to Plaintiff ROBERT JENNINGS in the absence of probable cause in an attempt to justify their baseless arrest of Plaintiff ROBERT JENNINGS.

71.   Upon information and belief, Defendant Police Officers issued a summons to Plaintiff ROBERT JENNINGS in the absence of probable cause due to unprovoked animosity towards Plaintiff ROBERT JENNINGS.

72.   Upon information and belief, Defendant Police Officers issued a summons to Plaintiff ROBERT JENNINGS in the absence of probable cause in order to meet quantitative productivity goals promulgated by their supervisors.

73.   Upon information and belief, Defendant Police Officers arrested Plaintiff ROBERT JENNINGS because they felt that Plaintiff ROBERT JENNINGS somehow disrespected his authority.

74.   Plaintiff ROBERT JENNINGS was charged with one of the three most common "contempt of cop" charges.

75.   As a result of the foregoing, Plaintiff ROBERT JENNINGS sustained, *inter alia,* physical injuries, mental injuries, emotional distress, embarrassment, humiliation and deprivation of his constitutional rights.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

76.   Plaintiff ROBERT JENNINGS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

77.   All of the aforementioned acts of the Defendant CITY and Defendant Police Officers, their agents, servants and employees, were carried out under the color of state law.

78.   All of the aforementioned acts deprived Plaintiff ROBERT JENNINGS of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

79.   The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with all of the actual and/or

apparent authority attendant thereto.

80.   The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

81.   The Defendant Police Officers and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

82.   As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time; he was put in fear for his safety and he was humiliated, without probable cause.

83.   As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputations and standing within his community.

84.   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

85.   Plaintiff ROBERT JENNINGS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

86.   Plaintiff ROBERT JENNINGS was subjected to illegal, improper and false arrest by the Defendant Police Officers.

87.   Plaintiff ROBERT JENNINGS was taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

88.   As a result of the foregoing, Plaintiff ROBERT JENNINGS's liberties were restricted for an extended period of time.

89.   As a result of the foregoing, Plaintiff ROBERT JENNINGS was put in fear for his own safety and humiliated without probable cause.

90.   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## THIRD CLAIM FOR RELIEF
## EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983

91.   Plaintiff ROBERT JENNINGS repeats reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

92.   Plaintiff ROBERT JENNINGS was roughly handcuffed while being unlawfully arrested.

93.   Plaintiff ROBERT JENNINGS complained to the Defendant Police Officers that he was in pain due to the handcuffs.

94.   Despite his complaints, the Defendant Police Officers refused to take off Plaintiff ROBERT JENNINGS's handcuffs.

95.   Despite his complaints, the Defendant Police Officers did not even loosen Plaintiff ROBERT JENNINGS's handcuffs.

96.   As a result of the foregoing, Plaintiff ROBERT JENNINGS was forced to seek medical attention for his swollen hands.

97.    Plaintiff ROBERT JENNINGS was handcuffed by one or more Defendant Police Officers in the absence of probable cause to arrest Plaintiff ROBERT JENNINGS.

98.   Plaintiff ROBERT JENNINGS had informed the Defendants that he had suffered a prior spinal injury, and requested to be treated with care in the course of his arrest to avoid exacerbating his pre-existing injuries.

99.   Instead, Defendants deliberately applied force to Plaintiff in an effort to cause him discomfort from his prior injuries.

100. As a result of the foregoing, Plaintiff ROBERT JENNINGS suffered pain and exacerbation of prior injuries.

101. Plaintiff ROBERT JENNINGS was subjected to excessive force by one or more individual Defendant Police Officers, in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

102. As a result of the above constitutionally impermissible conduct, Plaintiff ROBERT JENNINGS was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to their reputations and standing within their community.

103. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

104. Plaintiff ROBERT JENNINGS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

105. The Defendant Police Officers and Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff ROBERT JENNINGS's behalf to prevent the violation of his constitutional rights.

106. The individual Defendant Police Officers failed to intervene on Plaintiff ROBERT JENNINGS's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

107. The individual Defendant Police Officers failed to intervene on Plaintiff ROBERT JENNINGS 's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the plaintiff's rights were violated by their affirmative conduct.

108. As a result of the aforementioned conduct of the individual Defendants, Plaintiff ROBERT JENNINGS's constitutional rights were violated.

109. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

110. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

111. Plaintiff ROBERT JENNINGS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

112. Defendants instigated and issued legal process to place Plaintiff ROBERT JENNINGS under arrest.

113. Defendants arrested Plaintiff ROBERT JENNINGS in order to obtain collateral objectives outside the legitimate ends of the legal process.

114. These collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' personal satisfaction and/or subjective sense(s) of vindication for Plaintiff ROBERT JENNINGS's putative lack of respect for the Defendant Police Officers' authority.

115.  These collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' desire to penalize Plaintiff ROBERT JENNINGS for socializing in the West Village nightlife

scene as a black man.

116. These collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' desire to putatively justify their wrongful arrest of Plaintiff ROBERT JENNINGS by the levying of a "cover charge."

117. These collateral objectives outside the legitimate ends of the legal process include but are not limited to: the Defendant Police Officers' seeking to meet quantitative "productivity goals" for enforcement activity imposed by Defendant CITY OF NEW YORK through NYPD supervisors upon the Defendant Police Officers.

118. *Inter alia*, Defendants acted with intent to do harm to Plaintiff ROBERT JENNINGS without excuse or justification.

119. As a result of the aforementioned conduct of the individual Defendants, Plaintiff ROBERT JENNINGS's constitutional rights were violated.

120. As a result of the above constitutionally impermissible conduct, Plaintiff ROBERT JENNINGS was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

121. As a result of Defendants' impermissible conduct, Plaintiff ROBERT JENNINGS demands judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM
## UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. § 1983

122. Plaintiff ROBERT JENNINGS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

123. Defendants arrested and incarcerated Plaintiff ROBERT JENNINGS in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiffs' liberty, well-being, safety and constitutional rights.

124. Upon information and belief, the arrest of Plaintiff ROBERT JENNINGS was unlawful and lacked probable cause.

125. Upon information and belief, Plaintiff ROBERT JENNINGS was issued a summons to justify his wrongful seizure and detainment by the Defendant Police Officers.

126. Upon information and belief, the wrongful arrest and detainment of Plaintiff ROBERT JENNINGS was not undertaken by the Defendant Police Officers in

furtherance of their duties, or otherwise privileged.

127. Upon information and belief, the arrest and detainment of Plaintiff ROBERT JENNINGS was undertaken wholly to clothe the wrongful actions of the Defendant Police Officers under color of law.

128. Upon information and belief, the arrest and detention of Plaintiff ROBERT JENNINGS was undertaken to meet the arrest quotas imposed upon the Defendant Police Officers by Defendant CITY OF NEW YORK and/or its agents.

129. Upon information and belief, the issuance of a summons to Plaintiff ROBERT JENNINGS, was undertaken wholly to clothe the wrongful actions of the Defendant Police Officers under color of law.

130. Upon information and belief, the issuance of a summons to Plaintiff ROBERT JENNINGS, was undertaken in part to clothe the wrongful actions the Defendant Police Officers under color of law.

131. As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual Defendant Police Officers, Plaintiff ROBERT JENNINGS's constitutional rights were violated.

132. The acts complained of were carried out by the aforementioned individual Defendant Police Officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

133. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

134. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a) wrongfully arresting individuals without probable cause due to perceived lack of respect for the police officer (i.e., "testilying" "contempt of cop" arrests);

b) wrongfully arresting individuals without probable cause in attempts to justify excessive uses of force (i.e. "testilying" "contempt of cop" "cover charge" arrests);

c) wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e., "testilying" and arrest quotas).

d) wrongfully arresting persons without w without probable cause due to perceived lack of respect for the police officer; in order to meet quantitative "productivity goals" (i.e., "testilying" "contempt of cop" arrests used to satisfy arrest quotas).

135. The particular arrest of the Plaintiff is believed to have been motivated in

whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because the Plaintiff's arrests was undertaken in the absence of probable cause to arrest.

136. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests because they were undertaken in a manner which indicated that the individual Defendant Police Officers who participated in the Plaintiff's arrests made the determination to arrest the Plaintiff before determining why the Plaintiff should be arrested.

137. The particular arrest of the Plaintiff is believed to have been motivated in whole or in part by the aforesaid custom or practice of charging individuals with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration for personal vindication and/or as pretexts to justify use of force, and/or to justify punitive false arrests.

## <u>THE NYPD HAS A CONTINUING CUSTOM, PRACTICE, OR POLICY OF ARRESTING INDIVIDUALS IN ORDER TO FULFILL ARREST QUOTAS</u>

138. The NYPD has established, city-wide, quotas applicable to precincts as well as to individual officers, requiring those precincts and officers to make a specific number of arrests per month.

139. This quota system is illegal, because it encourages and forces the precincts and officers to arrest innocent people in order to fulfill the quotas.

140. Indeed, the use of an explicit quota system has been documented at precincts in Brooklyn.[1]

141. This quota system is enforced by the very top levels of the NYPD through the Department's Compstat system.

142. In a full-page ad on page 15 of the May 7, 2012 edition of the New York Daily News, The Patrolmen's Benevolent Association made clear that the quota pressure comes from the top.  Referring to these quotas, the ad is headlined: "Don't Blame the Cop, Blame NYPD Management."

143. The NYPD uses Compstat to track such enforcement actions statistically.

---

[1]     Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.

144. What street-level police officers do is a direct result of these command-level policies.

145. As the New York Daily News reported, NYPD supervisors have given explicit instructions to street-level enforcement personnel that quantity, not quality, matters – promulgating a policy that comes from the very top of the NYPD hierarchy. [2]

146. Individual officers have stepped forward to denounce the NYPD's use of quotas, which are illegal.[3]

147. Officers that refuse to meet illegal quotas have been subject to adverse employment actions and other retribution from their superiors.[4]

148. The NYPD officially denied that it maintained and enforced quotas throughout the Bloomberg/Kelly administration, but this was demonstrably false.

149. The existence of this unconstitutional arrest quota custom and/or policy was shown at that time by the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn .[5]

150. The existence of the aforesaid unconstitutional arrest quota custom and/or policy was further shown at that time by tape recordings acquired by WABC-TV/DT, in which a 41st precinct sergeant explains that each of his officers is held to a twenty summons per month, and one arrest per month, enforcement quota.[6]

151. The existence of the aforesaid unconstitutional arrest quota custom and

---

[2]     Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011.

[3]     Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011; Parascandola , Rocco, "An ex-Bronx cop Ex-Cop Sues City, Says Quotas Led to Firing: Ex-Bronx cop Vanessa Hicks suing city, says quotas led to axing,"
The New York Daily News, May 2, 2011; Parascandola, Rocco, "79th Precinct cops claim retribution: Nine officers say poor evaluations are payback from commander," The New York Daily News, April 10, 2012.

[4]     See id.

[5]     Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.

[6]     Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010. Article incorporated by reference herein and available online at
http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

policy was also demonstrated at that time by the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make quota-driven arrests as directed by their superiors even if they must void the arrests at the end of their shifts.[7]

152. On information and belief, the quota system remains alive and well under the DeBlasio/Bratton administration, despite continuing protests that it either never existed or has ceased to exist.

153. On information and belief, Defendants' decision to arrest Plaintiff ROBERT JENNINGS in the absence of probable cause indicates that his arrest was motivated, in whole or in part, by quotas.

### THE NYPD TOLERATES AND CONDONES
### WIDESPREAD POLICE PERJURY

154. The Defendant POLICE OFFICERS lacked cause to arrest Plaintiff ROBERT JENNINGS, and in order to cover for this, issued him a summons for disorderly conduct premised on patently false allegations.

155. NYPD policy rewards arrests that are based on false statements in criminal complaints sworn by NYPD officers.

156. As United States District Court Judge Jack Weinstein wrote: "Informal inquiry by [myself] and among the judges of this court, as well as knowledge of cases in other federal and state courts ... has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department."[8]

157. By its nature, the true extent of police perjury has not been documented. The Mollen Commission in the 1990's found that police perjury was so pervasive that the police even had a word for it: "testilying."[9]

158. Police perjury often involves lying about matters that are outcome determinative in litigation, and that go to the heart of a defendant's guilt or innocence.[10]

---

[7]     Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town."  Village Voice, May 11, 2010. Article incorporated by reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/.

[8]     Marzulli, John, "Judge Jack Weinstein rips NYPD on false arrests as brothers sue for $10M over wrongful narcs bust," The New York Daily News, Nov. 30, 2009, available online at http://www.nydailynews.com/news/crime/judge-jack-weinstein-rips-nypd-false-arrests-brothers-sue-10m-wrongful-narcs-bust-article-1.433711

[9]     Cunningham, Larry, "Taking on Testilying: The Prosecutor's Response to In-Court Police Deception," Criminal Justice Ethics Winter/Spring 2009.

[10]     Id.

159. Certain types of arrests occur with such frequency that the pattern and practice of police perjury has been at least partially exposed.

160. The NYPD has taken no steps to disincentivize – much less punish – the practice of perjury that underlies these arrests.  Indeed, faced with a continuing flood of litigation, the NYPD and Defendant CITY OF NEW YORK have instead increased their focus on defeating litigation,[11] and have opted to intrude upon the office of the prosecutor to attempt to induce individuals to admit probable cause to arrest in exchange for conditional dismissal of charges.[12]

161. Nor has the NYPD taken any steps to punish police perjury in other contexts.

162. There is a nexus between arrest quotas and the NYPD's toleration of police perjury: **police under pressure to make their quota of arrests make false arrests based on perjured accusations in order to do so**.[13]

163. Plaintiff's arrest was enabled by Defendant CITY OF NEW YORK's condonation of police perjury as a means to cover up wrongful arrests, including "contempt of cop" and "cover charge" arrests.

164. As a result of the aforementioned conduct of the Defendant CITY OF NEW YORK and the individual Defendant Police Officers, Plaintiff ROBERT JENNINGS 's constitutional rights were violated.

165. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff ROBERT JENNINGS was falsely arrested and incarcerated.

166. As a result of the above constitutionally impermissible conduct, Plaintiff ROBERT JENNINGS was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

167. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

---

[11] *See, e.g.,* Yoav Gonen, Shawn Cohen and Kirstan Conley, "DeBlasio Forming Legal Team To Fight 'Frivolous Cop Suits,'" N.Y. Post, Jan. 31, 2015, available online *at* http://nypost.com/2015/01/31/de-blasio-forming-legal-team-to-fight-frivolous-cop-suits/

[12] *See,* Rocco Parascandola and Stephen Brown, "EXCLUSIVE: NYPD turns 'prosecutor' to fend off lawsuits making civil rights advocates uneasy," N.Y. Daily News, Jan. 11, 2016, available online *at* http://www.nydailynews.com/new-york/exclusive-nypd-turns-prosecutor-fend-lawsuits-article-1.2491836.

[13]      Marzulli, John, "We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies," The New York Daily News, October 13th 2011.

## SEVENTH CLAIM FOR RELIEF
## <u>EQUAL PROTECTION UNDER 42 U.S.C. § 1983</u>

168. Plaintiff ROBERT JENNINGS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

169. At all times described herein, Plaintiff was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

170. One or more Defendant POLICE OFFICERS arrested Plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

171. The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

172. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

173. Plaintiff was taken into Police custody and detained against his will.

174. Plaintiff was injured by police actions and by police failures to intervene.

175. Plaintiff was maliciously issued process that was unsupported by the facts presented to the Defendant POLICE OFFICERS in an attempt to justify his mistreatment by Defendants.

176. The actions of Defendants heretofore described, constituted unlawful detention, imprisonment, assault and battery and malicious abuse of process and were designed to and did cause specific bodily harm, pain and suffering both in violation of Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York.

177. The Defendant "POLICE OFFICERS, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

178. As a result of the aforementioned conduct, the Defendants POLICE OFFICERS have violated Plaintiff's constitutional right to equal protection, and Plaintiff is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

179. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

180. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

181. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff was subjected to excessive force, false arrest, malicious abuse of process, and excessive and unnecessary detention.

182. As a result of the above constitutionally impermissible conduct, Plaintiff ROBERT JENNINGS was caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, and damage to his reputation and standing within his community.

183. As a result of the foregoing, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.


### EIGHTH CLAIM FOR RELIEF
### RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION

184. Plaintiff ROBERT JENNINGS repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

185. At or around the time that Plaintiff ROBERT JENNINGS came into contact with the Defendant Police Officers, Plaintiff was engaging in protected expressive associative conduct, to wit, enjoying socializing in an upscale neighborhood.

186. Defendant Police Officers took adverse action against Plaintiff ROBERT JENNINGS.

187. Defendant Police Officers took adverse actions against Plaintiff ROBERT JENNINGS by using wrongful and unjustified force upon Plaintiff.

188. Defendant Police Officers took adverse action against Plaintiff ROBERT

JENNINGS by unlawfully arresting him without probable cause.

189. Defendant Police Officers took adverse action against Plaintiff ROBERT JENNINGS by falsely accusing him of crimes and violations.

190. Defendant Police Officers took adverse action against Plaintiff ROBERT JENNINGS by taking Plaintiff into Police custody and detaining him against his will.

191. Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiff ROBERT JENNINGS and the adverse actions taken by the Defendant Police Officers.

192. The causal connection between the protected speech and conduct engaged in by Plaintiff ROBERT JENNINGS and the adverse actions taken against Plaintiff by Defendant Police Officers was demonstrated by, among other things, the fact that the Defendant Police Officers used excessive force against Plaintiff ROBERT JENNINGS in the absence of justification.

193. The causal connection between the protected speech and conduct engaged in by Plaintiff ROBERT JENNINGS and the adverse actions taken against Plaintiff by Defendant Police Officers was demonstrated by, among other things, the fact that one of the individual Defendant Police Officers told Plaintiff ROBERT JENNINGS that he was arrested for matching the description of a suspect who was already in police custody, and that the individual Defendant Police Officers did not release Plaintiff once the actual subject of their pursuit had been captured.

194. The causal connection between the protected speech and conduct engaged in by Plaintiff ROBERT JENNINGS and the adverse actions taken against Plaintiff by Defendant Police Officers was demonstrated by, among other things, the absence of probable cause justifying Plaintiff ROBERT JENNINGSS arrest.

195. The Plaintiff was falsely accused of crimes and violations and was taken into Police custody and detained against his will.

196. Following his arrest, Plaintiff ROBERT JENNINGS was issued a summons for disorderly conduct.

197. The above-described charges were a pretext intended to justify the Plaintiff's illegal arrest.

198. The actions of Defendants heretofore described, constituted unlawful detention, imprisonment, assault and battery and malicious abuse of process and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of their civil and constitutional rights of free speech, free expression and

expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

199. That the conduct and actions of Defendants acting under color of State law, in assaulting, detaining, imprisoning and maliciously issuing process to the Plaintiff, were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

200. Defendants deprived the Plaintiff of his liberty both in violation of his civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

201. Defendants' actions were undertaken under color of law and would not have existed but for Defendants using their official power.

202. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to his reputation and standing within his community.

203. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

204. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff ROBERT JENNINGS.

205. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of Plaintiff ROBERT JENNINGS's constitutional rights.

206. All of the foregoing acts by defendants deprived Plaintiff ROBERT

JENNINGS of federally protected rights, including, but not limited to, the right:

  A. Not to be deprived of liberty without due process of law;

  B. To be free from seizure and arrest not based upon probable cause;

  C. To be free from unwarranted and malicious criminal prosecution;

  D. To be free from malicious abuse of process;

  E. To receive equal protection under the law.

  207. As a result of the foregoing, Plaintiff ROBERT JENNINGS is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

 WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

     [a] Invoke pendent party and pendent claim jurisdiction.

     [b] Award appropriate compensatory and punitive damages.

     [c] Award appropriate declaratory and injunctive relief.

     [d] Empanel a jury.

     [e] Award attorney's fees and costs.

     [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
         February 9, 2016

                    Respectfully submitted,

                  _____~//s//~_____

                  SAMUEL B. COHEN [SC 0622]
                  ATTORNEY & COUNSELOR AT LAW
                  494 8th Avenue Suite 1000
                  New York, New York 10001
                  T/F: [212] 537-5919
                  SAM@SAMCOHENLAW.COM
                  ATTORNEY FOR PLAINTIFF